495 United States v. Kelly Let's just wait a minute for all of this to settle down. Okay, Mr. McColgan. Thank you, Your Honor. Good afternoon. My name is David McColgan. I'm the attorney arguing on behalf of Appellant James Kelly, and I have requested two minutes for rebuttal. Unless the Court has any questions about points 1 and 2 in my briefs regarding the trial issues, specifically the identification testimony of the two detectives, I'll rely on my briefs for those issues, and I'll focus the oral argument on the two sentencing issues, which in my briefs are points 4 and 5. Point 4 in particular is the brandishing enhancement, and point 5 is the Majorana issue regarding the supervised release conditions. Turning first to the brandishing enhancement, which added three levels to my client's offense level, this applied to the first robbery in October of 2021, where the I have a gun. The robber never pulled out a gun. The robber never made any effort to make his hand appear to be a gun. The guidelines provide for an enhancement. Well, he did make an effort to make it appear as if he had a gun, right? The reason that his hand is in his pocket is because he wants the victim to think that he has a gun, right? To think he has a gun in the pocket, but he never made the hand appear to be a gun. Right. So your claim sort of relies on the idea that there's a distinction between saying that you're holding a gun and saying that the hand itself is the gun. Yes. So if there was evidence that he extended his two fingers out to make it look like a barrel of a gun, you'd say, okay, well, then it's clear that the hand is appearing as a gun. That's correct, because the guidelines require that there be an object that appears to be the weapon. Well, I don't know. So the guidelines say the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury. And so it does say that the object was the instrument. But then it says, e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun. Right. So if I rob a bank and I have – and I display my hand wrapped in a towel to make it seem as if I have a gun, no one's going to think that my hand itself is the gun. Everybody knows I have a hand, right? They're going to think that what's obscured by the towel is that I'm holding a gun, right? Under Taylor, the object in the case of a hand that's appearing to be a gun, the object has to be the hand. So the hand has to be appearing to be the gun. And that's the example. But if the idea is that somebody is frightening somebody else with something that looks – that is a gun, why is your distinction a valid one? I mean, if we ask what the point of this is, it's just somebody who makes believe they have a gun. Yes, but the guidelines are very specific that in the case of a hand that is being made to be the object that appears to be the gun, the hand has to appear to be the gun. It's not enough that there's a statement, I have a gun. Well, I guess what I'm trying to say is that the guidelines are not very specific because you're right, there is the language that says that the object has to be the hand in a towel. So if I go into a bank and rob the bank with my hand wrapped in a towel and you were my defense lawyer, could you make the same argument? Well, everybody knows that the hand wasn't the gun. He wrapped his hand in a towel just to make the appearance that he was holding a gun in his hand, not that the hand itself was the gun. Wouldn't you be able to make that argument? I think that what would control in that situation would be what does the reasonable person, the teller, think in that situation? Okay, but what does the reasonable person, the teller, think in that situation? If I come in and I'm waving my hand wrapped in a towel at the teller and I say, I'm going to shoot you if you don't give me the money. Do you think the reasonable teller thinks that my hand is a gun or that I'm holding a gun in my hand? I think the reasonable teller is going to think that there is a hand, that there is a gun. Even if there's no – But the teller is both a hand and a gun. Therefore, like, there's a hand that is not itself a gun and there's a gun in the hand, right? Well, if the person is faking a gun, the teller is going to think that the hand is the gun. That's the problem. Do you think the teller is going to think that I don't actually have a hand, that I have some kind of, like, robot thing where my hand is actually a gun? No, not at all. The point is that it's a deception where the hand is made to appear to be a gun. And so if the object that is the deadly weapon is looking like a deadly weapon, then – So if I know from the guidelines that wrapping my – the hand in a towel during a robbery leads to the enhancement, what's the difference between that and keeping my hand in the pocket? Isn't keeping a hand concealed in a pocket like wrapping a hand in a towel? It is if, for example, I go like this and I make my hand appear to be a gun by pointing my fingers out through the fabric. But if I just go like this and put my hand under my jacket like this and I say I have a gun, I am gesturing to indicate that somewhere in there I have a gun. In the same way, the robber in this case put his hands in his pockets. There is no evidence that he made the hand appear to be a gun or that anything appeared to be a gun. Instead, it's a gesture. Even though the guidelines say that it applies when the defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun, it can't just be wrapping the hand in a towel. It has to be that they do something with their hand to make it appear that the hand itself is the gun as opposed to the idea that they're holding the gun in the hand. Exactly. And that's what Taylor says. Taylor uses the language of the hand. Well, Taylor is different because Taylor, there's no concealment, right? He just sort of his hands are out. But they say I have a gun in my waistband. But they talk about the concealment cases. In fact, they quote the Hoffa case where it says the defendant did not merely have his hand in his pocket but used it to create the appearance that he was carrying a firearm by using his finger.  So you're saying everything depends on whether he extends his fingers or does not extend his fingers. That's right? The hand itself has to appear to be the object. Right. It can't just be a gesture. Because the language says it has to create the impression that the object, the hand, was an instrument. Yes. So as I was thinking through this case again last night, I realized I have these bath sheet towels that are like eight feet by three feet. You could wrap your whole arm in that thing and you could believe you had a long gun in there. And on the other hand, you could wrap your hand in a tea towel and you would really have to make your hand look like a gun. So I'm not sure that the towel thing really helps us here because you could wrap your hand in a towel like this with the wrap sort of in a fitted way that makes it look like the shape of a gun or you could wrap your whole hand in a towel in a way that you can't tell. But at the end of the day, setting aside the question of is this a small towel or a big towel, the question is do you have to use the object to create the impression that the object was the instrument? Yes. Right. It's not the first part about using the object, the hand, in a manner that creates an impression. You could do that by keeping your hands in your pockets. But you can't create an impression that your hand is a gun without doing something more than hiding it. Exactly. That's exactly. It's the second part. You have to be creating the impression that the object is the weapon. So was there an objection to the enhancement in sentencing? No. Right. So they were doing it for plain error, right? This was plain error because all we have in the pre-sentence report is the mere statement that he came into the It's plainly erroneous. It's clear and obvious that even though the sentencing guidelines say that the enhancement applies when you wrap your hand in a towel during a robbery, that the district court should have known it was plainly inadequate when you put your hand in your pocket during a robbery to create the appearance of a gun? It is plain under Taylor, Your Honor. Taylor's examination of the guidelines, because Taylor makes clear that merely putting the hand in the pocket is not enough. You have to assume it's the error is plain. Let's just assume that. But the fourth prong of plain error is the idea that allowing this error to stand would undermine confidence in the judiciary and the fairness of the process. In this case, where the defendant, it's undisputed, I think, said, I have a gun and I'm going to shoot you if you don't do what I say. Do we feel like any error in the question of what kind of towel was involved kind of question, whether his fingers were out, is the kind of thing that undermines confidence in the judiciary and it would result in a plain error reversal? It does because that would be a two-level enhancement, a threat, as opposed to a three-level enhancement. Right. And I'm asking why the difference in that one-level increase, which I refuse to call an enhancement from the perspective of your client, is why that meets the fourth prong of plain error under our case law? Because of the Supreme Court in Rosali's Morelli's, where it said that plain guidelines error merits relief under Rule 52b. They're basically saying that it meets the fourth prong because it affects substantial rights, because it affects the integrity of the courts, because it's — If there had been an objection, could the prosecution have then asked for further argument to show that in this case there was something to make it look like a gun? In other words, one of my strongest feelings about plain error is to keep people from not objecting and then making an argument which could have been countered if an objection had been made. So I want to know if you had objected, could the argument on the other side have been made more thorough? No, because we had a trial in this case and we had evidence and we have the video evidence, and all of that really comes together on page 327 of the appendix, where there's a series of questions by the prosecutor of the cashier who is simultaneously watching the video with the jury, and the cashier is explaining what can be seen. And the prosecutor asks him several times, well, what was he doing with his hands in his pocket? And all he says is he had his hands in his pocket. In particular, he says, Mr. Almantaser, what are we looking at here? This is the video. That's the robber. Question. And what, if anything, could you see the robber doing with his hands in this video clip? Answer. He had them in his pockets. The prosecutor tries again. And what, if anything, was the robber doing with his hands during the robbery when he was inside the deli based on what you could observe? Answer. He kept his hands in his pockets and said that he's carrying a gun and to give me the money. So the prosecutor tried several times. That was all the evidence. But to Caleb Breese's question, do we know from the video or from testimony that he definitely was not extending his forefingers to enhance the appearance of a gun in his pocket? Or was he focused on that because nobody raised the question? It's clear from looking at the video that it's not there in the video. It's not there in the still images. Those are part of the appellate record. I know the government refers to them. It's a sophisticated analysis to, like, zoom in on the shadows of the pocket, I guess, to make that determination. But we also see the video. I guess I don't know. I guess it's not obvious just from watching the video simply, like, what exactly he's doing with his hand except keeping it in his pocket. But that's why Alman Taser's testimony is particularly significant because he was the person who experienced it. And that's all he said. He simply had his hands in his pocket. And that's all he said.  No statement that it looked like a weapon in and of itself. Okay. I think we have that argument. Do you want to say something briefly about the Mayorana question? Yes, Your Honor. Mayorana is very clear that at this point, the standard conditions of supervised release must be pronounced or, quote, unquote, expressed. They must be pronounced, but they can be pronounced by reference to a document the defendant has that provides them. And we said the PSR especially is a good vehicle for doing that. So in this case, the district court made sure that the defendant had read the PSR and gave him time to do it right there, right? He did. And then again made sure that he had read it, right? That's correct. And then he orally pronounces that the standard conditions 1 through 12 are going to apply, and the 1 through 12 refers to those listed in the PSR. He didn't say that they referred to the ones in the PSR. That's what was missing in this case. So if he had said instead of saying I want to make sure you've read the PSR and then saying standard conditions 1 through 12 apply, if he had said standard conditions 1 through 12 and those are the ones in the PSR, then that would be fine? Yes, because it requires specific incorporation by reference. By reference means that they had to refer, the judge had to refer to the PSR. Never refer to the PSR. And Majorana says that the standard conditions actually could be incorporated from three different documents, from the PSR, the guidelines, or some special notice of the court. So we don't know what he's referring to here when he just says the 12 standard conditions. Well, you know, one of the, part of the reasoning in Majorana is that the defendant doesn't even know to object or to ask for clarification if it goes unstated that standard conditions are going to apply. You know, the district court makes sure that he's read the PSR. The PSR has standard conditions 1 through 12. We know that when he says 1 through 12, it's not referring to the guidelines because guidelines has 13 and 12 is not in the PSR, you know, the guideline standard condition 12. So he's definitely referring to the PSR. If it were ambiguous as to whether it's the PSR list or some other list, wouldn't the defendant have said something? I think it is unclear. The PSR is only referred to at the beginning of the sentencing and at the very end is when he mentions the standard conditions 1 through 12 apply. How is anybody supposed to know that that's referring to something that was in the PSR as opposed to any other? The court says make sure the defendant has read the PSR. Yes. He says that in the beginning. Can the defendant then be treated as if he has knowledge of what's in the PSR? Certainly he can. If you make sure that he reads the PSR and talks about it with his attorney, like we can treat him as if he knows what's in the PSR, right? That's correct. But how is he supposed to know? The PSR did have standard conditions 1 through 12, right? Yes, it did. But, again, without a specific reference, it doesn't meet the requirements of my requirement. Let me ask you a practical question about this because PSRs are handled differently in different districts. So I see that where the 12 standard conditions are in this PSR is actually at the end of the PSR under the probation officer's recommendation. Yes, Your Honor. Is that whole thing provided to the defendant? So in Connecticut, for example, the defendant doesn't always the parties don't always receive the recommendation. And so I'm trying to make sure I understand when the defendant gets the PSR, does he get everything, including what in the December 2024 version starts at page 21 and in the final post-sentencing March 13th version starts at page 22? My understanding is that he does get everything that is in. Okay. So we don't have any question as to whether he would have seen that these were the 12 recommended that these 12 standard conditions were recommended. That's correct, Your Honor. And so, again, we're at this point. That would make a plain error review? Because he had an opportunity. He knew that this was recommended and had an opportunity to object and failed to object? Well, under my irona, this counts as plain error. Let's confirm that we're on the same page, that it is a plain error standard of review because he was on notice, had a meaningful opportunity to object, and failed to object. Yes, Your Honor. Okay. But this is a pre-my irona case, of course. But, yes. Right. So we're on plain error review. We're on plain error review. All right. Thank you. Okay. Thank you, Mr. Colfin. You've reserved time for rebuttal, so we'll hear from you again. But let's turn to the government. Mr. Martley. You have a towel to stick your head in? No, but I do have pockets, Your Honor. Your Honors, may it please the Court, I'm Assistant United States Adam Margulies. I represented the United States in the district court, and I represent the United States on appeal. The judgment should be affirmed both as to Kelly's guilt and sentencing, and I'll skip to the sentencing issues that were just discussed, unless Your Honors have any questions regarding the other issues. With respect to the guidelines, the guidelines don't make any material difference between the towel example that's set out in the guidelines and what happened here. There's nothing in the guidelines when giving the towel example and whenever you Well, I understand that maybe, as I was suggesting, the towel example creates some ambiguity. But the language says the defendant used the object in a manner that created the impression the object was an instrument capable of inflicting death or serious bodily injury. What's the object that he's using in this case? It's the hand, right? That's correct. So does it have to create the impression of the hand itself as an instrument capable of inflicting death or serious bodily injury? Yes, Your Honor. The defendant does have to create the impression that the hand itself is an instrument capable of doing that, and that's what happened here. And that's what's going on in the towel example. The object is not the towel in the towel example. It's the hand. But the guidelines don't say that the hand under the towel needs to be in the specific shape of a gun. And what do we do with Taylor? Where he's, you know, we know a lot of people hold a gun in their waistband, and in Taylor, the allegation is that the defendant is sort of gripping his waistband and acting like he's keeping something secured there. What's the difference between keeping something secured at your waistband that might be a gun or keeping something secured in your hoodie pocket that might be a gun? So in Taylor, the hand was used to suggest that there might be a dangerous weapon elsewhere, but the hand was visible in Taylor. There was no concealment of the hand to suggest that the hand itself could be a dangerous weapon.  But here – So as you're saying, you know, a hand in the towel or a hand in the pocket, everybody knows you have a hand, but, like, the fact that your hand is creating the bulge of the towel or in the pocket creates the impression that there is a gun. So, like, you know, it's not obvious where the hand ends and the gun starts, but, like, you know, the bulge, you know, includes the gun. And the problem in Taylor is the hand was completely visible, so, like, there was no object that was being used to create the impression of a gun. That's exactly right. So that's a way to say that there isn't really a distinction between, you know, extending the fingers to create the impression of a gun, because any bulge that's in a concealed place, you know, creates the impression of a gun. That's right, Your Honor. You just have to look at whether, in the totality of the circumstances, the concealed hand gives the impression that it's a gun. And that's exactly what you see here. You see the defendant walking into the store. Basically the entire time he's in the store, both hands are in his pockets. You see at certain times he actually bulges out his pockets while saying, I'll shoot you. And I think, frankly, he didn't even need to bulge out his pockets under the case law. If he keeps his hand in his pocket while saying, I'll shoot you, I think that would be enough. But if, in fact, there were an objection and the district court made you explain how the hand itself was being used to create the impression of a gun, you would have said, well, look, he bulges out his pockets to make the bulge appear bigger, and he's using his hand to do that, and that creates the impression that the hand itself is the gun. That's right, Your Honor. I don't think it's necessary, but I do think it's an additional factor that creates that impression here. And I'll just note, I mean, as far as that hand being in the pocket while threatening somebody goes, that is something that this court in Taylor actually specifically referenced when citing favorably out-of-circuit case law. One of the cases that this circuit in Taylor, this court in Taylor, cited was United States v. Souther and parenthetically noted that it was a case holding that a concealed hand may serve as an object that appears to be a dangerous weapon where the defendant's hand was concealed in a coat pocket. I'd like to go back to the notion that if an objection had been made, then what was needed under the guideline could easily have been met. Are you arguing that? Your Honor, certainly if an objection had been made, the government would have had an opportunity to flesh out the arguments that we're talking about here, to the specific parts of the video. The government may have also had an opportunity to put on additional evidence if it sought to do so. Whether it would have actually put on additional evidence beyond what was in the trial record is a separate question, but the government would have had that opportunity and the defendant would have had an opportunity to make arguments as well. That's a little long and confusing, but just like to answer Judge Calabresi's question, your position is you don't think the guidelines require particular use of the hand as long as you're creating a bulge with the hand that creates the appearance of a gun. But if the district court had said you need to show the hand itself was being used as an object that could be a gun, you would point to his using his hands to bulge out his pockets, which would have met that requirement. That's correct, Your Honor. And that's based on the government's – in your brief, what you cite to is the video, right? So that's based on your perception or your reading of the video, but not on the testimony of the clerk. It's based on the video. Correct, Your Honor. Unless there are further questions on that, I'll just turn briefly to the Mariana issue. As Your Honor's noted, first of all, just to respond to Judge Merriam's question, the PSR, including that provision of the PSR, is made available to the defendant in advance of sentencing. When Judge Woods said after confirming that the defendant had an opportunity to read the PSR, that he did read the PSR, and that he discussed it with his counsel, quote, the standard conditions of supervised release 1 to 12 shall apply, that was sufficient. I know there was a prior panel of this court, an unpublished decision in Williams that found in very, very similar circumstances that it was sufficient there, and we urge the court to reach the same conclusion here. Unless the court has any further questions, the government will otherwise rest on its feet. Thank you. Thank you very much, Mr. Marvalese. We'll turn back to Mr. McColgan on rebuttal. Thank you, Your Honor. Just going back to the enhancement issue, the Second Circuit in Taylor is very clear in stating, in summarizing the hands in the pocket cases, where the hand is concealed, that none of these cases stand for the principle that using one's hand to suggest possession of a separate dangerous weapon is sufficient for application of the enhanced   Because in Taylor, the idea was his hands were visible, and the suggestion was he had a gun elsewhere, meaning not in his hand, but in his waistband, right? Right. But then they discuss the hands in the pocket cases. They look at all of those cases and say that even if the hand is in the pocket, none of those suggest that just having a hand in the pocket is sufficient. Instead, the hand — You're saying that Taylor says, like, just having a hand in the pocket is not sufficient? Correct. Where does it say that? Well, in two places. One where it quotes Hoffa. The defendant did not merely have his hand in his pocket, but used it to create the appearance he was carrying a firearm, using his finger to suggest that he had a firearm. So that's the first place. Hoffa. And they quote that with approval. I get that. And what's the second one? The second one is then right after that, where they also — they've cited Souther, which the government just mentioned. None of these cases stands for the principle that using one's hand to suggest possession of a separate dangerous weapon is sufficient for application of the enhanced — Yeah, but that's saying about the separate — the separateness that was in Taylor. But I guess, how do you respond to Mr. Margolies' point that, you know, the hand in the towel, the hand in the pocket, it's not obvious where the hand ends and the gun begins, but obviously the hand to some extent is being used to create the impression that part of it is the gun, because the hand creates a bulge. And the impression that's being given is that the bulge represents both a hand and a gun, when in fact it's only a hand. So to some extent, the hand is being used to create the impression that it is a gun. There's got to be some evidence to support the notion that the hand appears to be the gun. It has to be a — I just think it is, right? So, like, if I just create — if I have a concealed bulge, you agree what you're doing is you're making it appear to the victim as if the bulge includes a gun, right? Well, you're gesturing to indicate that in my pocket, I have a gun. Right, but if the pocket were completely flat, it would not create the impression that there's a gun, right? That's right. But if I have my hand — Right, so if you're using your hand to create a bulge that could be a gun, doesn't that mean you're suggesting, at least to some extent, that the hand itself is a gun? I think it has to be more than a bulge, Your Honor.  It has to be something — because otherwise it's simply a gesture with a hand to indicate that in my pocket. It's just like me going like this and saying, I have a gun, like this. There's nothing here that appears to be a gun. I mean, if I go like this, if I just waved my hand at you and said, give me all your money, would you think I had a gun? No. No. Okay. Because your hand is not concealed. The hand in the pocket makes a difference, right? Because I'm using the concealed bulge in the pocket to create the appearance that I have a gun, right? It's a gesture to where — What creates the bulge in the pocket? It's the hand, right? It's the hand in the pocket. All right. If you have no other objects in your pocket, you're using your hand to create the impression of a gun. And the hand itself that creates the bulge is the thing that creates the appearance of the gun. Well, there's a distinction between gesturing into the pocket like this and creating some bulge saying that I've got a gun here and making the hand appear. The language in Taylor is — Well, let's talk about Taylor. You've mentioned that Taylor cites Hoffa and Souter. And in between those two, Taylor cites something called Stittmann, which is a Stittmann told the teller he had a gun. He waved at his side where the teller observed a bulge by his hip. Another bank teller overheard him say he was armed and noticed that he had one of his hands in his pocket as if he were concealing a weapon. And that's cited with approval in Taylor and specifically refers to this idea of the bulge being sufficient. Why should we focus on Hoffa and Souter and ignore Taylor in the middle there? Because the suggestion there was by the defendant that that bulge is a gun. So he's saying basically that this bulge here — He doesn't say that in Stittmann. He just says, I have a gun. And the witness testifies that he noticed a bulge near his hip. Well, in Stittmann, he's gesturing with one hand and pointing towards the bulge. He's pointing towards the bulge and saying, I have a gun. So he's pointing towards a bulge and, therefore, that bulge itself is allegedly the gun. Well, it says he waved at his side, but — I mean, come on. You're saying that if he creates a bulge with his hand and says this bulge is a gun, then that satisfies the enhancement. But if he creates a bulge in his pocket and doesn't separately gesture towards it and just sort of says, I'm going to shoot you, that would not satisfy the enhancement? Taylor distinguishes between a gesture and — Isn't that just completely ridiculous? Your Honor, this is the distinction that Taylor makes. Otherwise, we're expanding the three-level enhancement beyond what it was intended to be. This is supposed to be brandishing an object. And we're turning it into a place, into something where — Why isn't it brandishing if you have something in your pocket that looks like a gun and you say, I have a gun? Just brandishing, you know, just focus on that word. I agree with you. That's exactly what Taylor says. If it's something in your pocket and it looks like a gun, that meets the standard of brandishing. If your hand in your pocket would look to the other person like a gun, as in this case, it would seem to, why isn't that enough? We don't have that here. The prosecutor repeatedly asked Almontazer what he saw and what could be seen on the video. And all he said was he had his hands in his pocket and he said he had a gun. Okay, well, we just heard from the government that if, in fact, Kelly had objected to the enhancement, the government would have said, well, we don't think you need to separately show that you're creating the impression that the hand itself is the gun if you're creating the impression that the hand is holding a gun. But if we did have to satisfy that, what we would point to is the fact that during the encounter, he uses his hands to flare out his pockets to, like, gesture at him. And that would show that he is using his hands to create the impression that the hand itself is a gun, right? Because if you're gesturing through the idea that you're pointing a gun at the person, that movement is made by your hand. So you're using your hand to imitate a gun. So why would that not have been sufficient, assuming that this is a requirement of the guidelines? That's just not in the evidence. It's not in the video. It's not in the evidence because Kelly did not object. So the government had no opportunity to put it into the evidence. No, I mean, it's not in the video. The video can be viewed as part of the appendix, and it's not in the video. It's simply not there where he's making something that looks like a gun. You can see his hands in his pocket, but there's nothing where he's, like, pointing out or making it look like it's a gun. On the general point about the idea that if you use your hand to create a bulge, the hand is at least to some extent being used to imitate a gun, as versus the requirement that the fingers need to be extended to, like, show more clearly that the hand itself is a gun. You're saying it is clear and obvious and not subject to reasonable dispute that the first one is unacceptable and the second one would be sufficient. That's the line that Taylor draws. The hand has to be a stand-in for the gun. It can't simply be that, well, I'm holding a gun in my pocket here, and you can see that there's a bulge. And obviously I have my hand in my pocket. Okay. Thank you. Thank you, Your Honor. Thank you very much, Mr. McColgan. The case is submitted.